**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SVANACO, INC. d/b/a/ americaneagle.com | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-11639 |
| | ) | |
| v. | ) | Judge Andrea R. Wood |
| | ) | Magistrate Judge Susan E. Cox |
| JONATHAN BRAND, and MARTY GILMAN, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

The Court hereby recommends that Plaintiff's Motion to Enforce Settlement Agreement [Dkt. 250] be granted in part and denied in part as discussed below, as follows: 1) the motion should be denied to the extent it seeks to add a cure period and default judgment penalty if MGI fails to make an installment payment; 2) the motion should be granted to the extent it seeks to enforce the "mutual global release" the parties agreed to at the settlement conference, provided any such provision: a) includes a release of "MGI, its predecessors, successors, affiliates, and parents, and collectively, their respective former, current and future directors, officers, employees, agents, representatives, shareholders, attorneys, fiduciaries, insurers, and assigns (the "MGI Released Parties);" b) includes a release of all claims against Jonathan Brand based on actions he took within the scope of his agency relationship with MGI; c) does not release any claims against Jonathan Brand based on actions he took outside the scope of his agency relationship with MGI; and d) does not include the general carve-out for all claims against Jonathan Brand in Plaintiff's February 19, 2020 draft settlement agreement, which is not an enforceable provision of the settlement agreement; and 3) the motion should be granted as to the mutual non-disparagement clause and MGI should be ordered to agree to the non-disparagement clause drafted by Plaintiff in

1

the February 19, 2020 draft settlement agreement, which is consistent with the terms sheet signed at the settlement conference. The Court further recommends that Defendant Marty Gilman's Cross-Motion for Relief from Compliance with the February 5, 2020 Agreement [Dkt. 279] be denied.[1] Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. Unless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient. All matters relating to the referral of this action are resolved; case returned to the assigned judge. Referral terminated.

## FACTUAL BACKGROUND

The underlying dispute in this action arises from a disagreement between Defendant Marty Gilman, Inc. ("MGI") and Plaintiff Svanaco, Inc. ("Plaintiff") following MGI's hiring of Plaintiff to develop and redesign MGI's website.[2] [Dkt. 237 at p. 1.] After three years, Plaintiff had not yet delivered a completed website to MGI,[3] and in October 2015, MGI hired Defendant Jonathan Brand ("Brand") as a consultant. [*Id*. at pp. 1-2.] MGI engaged Brand as an independent contractor to review the beta website Plaintiff had created and determine whether the amount of time Plaintiff billed to create the beta website was accurate. [*Id*. at p. 5.] Brand advised MGI he believed Plaintiff had overbilled MGI for building the beta website, and MGI's CEO asked Brand whether Plaintiff could be "shamed" into repaying MGI for the money it had paid Plaintiff. [*Id*.] The parties dispute

---

[1] This motion is styled as a "Cross-Motion" and is related to the Motion to Enforce; as such, the Court believes it is encompassed by the referral from the District Court.
[2] Judge Wood thoroughly described the factual background of this case in her Memorandum Opinion and Order on the parties' cross-motions for summary judgment. [Dkt. 237.] Where possible, the Court relies on Judge Wood's recitation of the undisputed facts in that opinion.
[3] The parties dispute whose fault the delay was, each blaming the other, but that issue is not relevant to the matters presently before the Court. Plaintiff also disputes that it overbilled MGI for the work on MGI's website.

what MGI's CEO intended when he asked Brand to "shame" Plaintiff, but there is no dispute that in the next several months Brand proceeded to engage in a smear campaign against Plaintiff, including authoring negative reviews on several third party websites and orchestrating a dedicated-denial-of-service attack of Plaintiff's websites. [*Id.*] Plaintiff has sued both MGI and Brand pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), the Computer Fraud and Abuse Act ("CFAA"), and several state law causes of action; MGI countersued for breach of contract. Although Plaintiff and MGI have vigorously litigated this case, Brand has been more akin the proverbial empty chair during most of the litigation, and a default (but not a default judgment) is currently entered on the docket against him. [Dkt. 237 at p. 2 n.1.]

The District Judge referred the case to this Court to hold a settlement conference. A settlement conference was held on February 5, 2020, with only MGI and Plaintiff attending the conference; Brand did not attend the conference or participate in any way. MGI and Plaintiff were able to reach a settlement in principle at the conference and signed a terms sheet at the conference.[4] The terms sheet stated that MGI agreed to pay Plaintiff a specific settlement amount, to be paid in 12 equal payments beginning on April 1, 2020 and due on the first day of each subsequent month. [Dkt. 250-1.] The other relevant provisions called for a "mutual non-disparagement clause" and a "mutual global release." [*Id.*]

Following the settlement conference, on February 19, 2020, Plaintiff circulated a draft settlement agreement and release. In addition to the aforementioned conditions, it contained provisions that outlined what would happen if MGI missed one of its installment payments,

---

4  It is this Court's standard practice to have parties a sign terms sheet at the conclusion of a successful settlement conference to manifest agreement on the material terms of the accord reached at the conference, before drafting and executing a more formal and robust settlement over the ensuing days or weeks. If a term is agreed to and signed by the parties to the terms sheet, the Court generally considers it a valid and enforceable agreement; conversely, if a term is not included in the terms sheet, the Court assumes it was not material the settlement reached at the conference and will not enforce it against either party if they cannot reach an agreement on those additional items during the negotiation of the more in-depth settlement agreement.

3

including a cure period for missed payments and an agreed default judgment if MGI failed to cure. [Dkt. 250-2 at ¶¶ 1-3.] Plaintiff's draft agreement also released "MGI, its predecessors, successors, affiliates, and parents, and collectively, their respective former, current and future directors, officers, employees, agents, representatives, shareholders, attorneys, fiduciaries, insurers, and assigns (the "MGI Released Parties)." [Dkt 250-2 at ¶ 4.] It also provided the following:

> IT IS EXPRESSLY UNDERSTOOD by MGI that, notwithstanding [Plaintiff's] position in the Lawsuit that Jonathan Brand was at all relevant times an agent of MGI, the term "MGI Released Parties" does not include and cannot be construed to include Jonathan Brand, and it is further expressly understood by MGI that Svanaco does not release any claims it has, had or may have had against Jonathan Brand, whether brought in the Lawsuit or elsewhere.

[Dkt. 250-2 at ¶ 4.] Finally, the non-disparagement clause stated "MGI agrees that it will not make any statements, either written or oral, and will not take any other actions that disparage or reflect negatively on [Plaintiff]." [Dkt. 250-2 at ¶ 8.]

MGI circulated a revised draft on March 16, 2020 that differed significantly from Plaintiff's draft. It did not include any provisions for MGI missing a payment and moved the first installment payment to July 1, 2020. [Dkt. 278, Ex. C.] The release proposed by MGI matched Plaintiff's proposed language, but removed the disclaimer that Plaintiff was not releasing any claims against Brand. [*Id.*] Finally, the non-disparagement provision in MGI's draft settlement agreement provided that Plaintiff could not disparage MGI, but did not include any reciprocal duties for MGI. [*Id.*]

Plaintiff then filed the instant Motion to Enforce Settlement Agreement, seeking "that this Court enforce the settlement agreement between [Plaintiff] and MGI," and "order [Plaintiff] to abide by the terms" of the February 19, 2020 draft agreement that Plaintiff prepared and was rejected by MGI. [Dkt. 250 at pp. 3-4.] During the briefing of Plaintiff's motion, MGI filed a Motion for Relief from Compliance with the February 5, 2020 Agreement, wherein MGI contends

4

that it should be relieved from its settlement agreement with Plaintiff because the COVID-19 pandemic, which began before payments were due on the settlement agreement and affected MGI's business, made it impossible or impracticable to perform under the contract and/or frustrated the purpose of the contract. [Dkt. 279.] Both motions are fully briefed and ripe for disposition. For the reasons discussed below, the Court recommends that Plaintiff's motion be granted in part and denied in part, and that MGI's motion be denied.

## DISCUSSION

### I. Motion to Enforce Settlement Agreement

State contract law governs settlement agreements. *Magallanes v. Ill. Bell Telephone Co.*, 535 F.3d 582, 584 (7th Cir. 2008); *Leibowitz v. Trebels*, No. 12 C 1536, 2012 WL 5559554, at *3 (N.D. Ill. Nov. 14, 2012). Under Illinois law, a settlement agreement is valid and binding so long as there is an offer, acceptance, and a meeting of the minds on all material terms. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007); *Artuk, Inc. v. AKT Corporation*, 2014 WL 3895920, at *4 (N.D. Ill. Aug. 7, 2014) (citations omitted); *In re Estate of LeBloch*, 2013 Ill. App. 121093-U, 2013 WL 2643998, at *4 (Ill. App. 2d Dist. 2013). A meeting of the minds occurs "where there has been assent to the same things in the same sense on all essential terms and conditions." *IMI Norgren, Inc., v. D & D Tooling Mfg., Inc.*, 306 F. Supp.2d 796, 802 (N.D. Ill. 2004); *see also Dynegy Marketing and Trade v. Multiut Corp.*, 648 F.3d 506, 515 (7th Cir. 2011) (in order for there to be a contract between parties, there must be a meeting of the minds or mutual assent as to the terms of the contract); *St. George Investments LLC v. QuamTel, Inc.*, 2014 WL 812157, at *7 (N.D. Ill. Mar. 3, 2014) (citations omitted). "Absent mistake or fraud, a settlement agreement will not be disturbed or set aside lightly." *LaSalle Nat. Trust, N.A. v. Lamet*, 2014 Ill. App. 121730-U, 2014 WL 1047881, at *8 (Ill. App. 1st Dist. 2014).

In this case, MGI and the Plaintiff reached an agreement in the form of the terms sheet

5

signed by those parties. The terms sheet did not contain many terms, but represented the broad strokes the parties were able to agree to at the time of the settlement conference. It is signed by representatives for both Plaintiff and MGI. There was offer, acceptance, and meeting of the minds of those terms, and the terms sheet is valid and enforceable. Conversely, the February 19, 2020, was not agreed to by the parties; there was no meeting of the minds over additional terms in that document, and the Court will not enforce those terms. The Court recommends that Plaintiff's motion be denied to the extent it seeks to enforce the February 19 draft in its entirety, as that agreement contains many additional issues to which MGI did not agree. With that framework in mind, the Court turns to the specific provisions Plaintiff seeks to enforce.

As to the provision that Plaintiff added regarding the procedure for missed installment payments, no agreement was reached before this Court on that matter. While such protocols are often are part of settlement agreements that call for payments to be made over time, there is no indication in the terms sheet or the Court's notes from the settlement conference that the parties agreed to the system Plaintiff proposed. This does not, however, leave Plaintiff without remedy in the case MGI fails to make a payment. As noted above, a settlement agreement is a contract, and a breach of a settlement agreement may lead to a separate law suit for breach of contract, provided Plaintiff can prove there was a meeting of the minds on the timing and amount of payments.[5] However, the provision that Plaintiff added to the more robust contract circulated among the settling parties was not part of the accord struck during the settlement conference, and the Court recommends it not be enforced.

The second issue is whether the specific carve-out for Brand is an enforceable part of the

---

5 In light of this reality, the Court is perplexed why MGI is fighting the provision that gives it a 14-day cure period for missed payments, which seems like more generous terms than potentially being sued for breach of contract the day after MGI misses a payment.

agreement. Once again, the terms sheet is fairly sparse; it only says that MGI and Plaintiff agreed to a "mutual global release." It is MGI's position that this language means that all claims against all Defendants (*i.e.*, MGI and Brand) were released from all claims. Plaintiff maintains that it could not have released all claims against Brand because he was not present at the settlement conference, and did not offer any consideration for his release.

The answer is somewhere between these two poles. The term "mutual" is defined in Black's Law Dictionary as follows: "1. Generally, directed by each toward the other or others; reciprocal. 2. (Of a condition, credit covenant, promise, etc.) reciprocally given, received, or exchanged. 3. (Of a right, etc.) belonging to two parties; common." Clearly, the concept of reciprocity is central to the definition of mutuality; in order for a release to be "mutual" it must be reciprocal. In this case, there could only be reciprocity between MGI and Plaintiff because both parties were present at the settlement conference and could agree to release their claims against one another. Conversely, there could be no reciprocity in any agreement between Plaintiff and Brand because Brand was not present to agree to mutually release any claims he may have had against Plaintiff, and provided no consideration for Plaintiff to release its claims against him. Therefore, the qualifying term "mutual" can only relate to claims between MGI and Plaintiff. Because Brand was not present as the settlement conference, did not make any agreements with Plaintiff, and did not give any consideration for release of Plaintiff's claims against him, the Court does not believe Brand can be released from all claims against him, and recommends Plaintiff's motion be denied to the extent it seeks to enforce the carve-out recited above.

However, the inquiry does not end there because there is a second qualifying term to the release – "global."[6] The Court, having been present at the settlement conference, understood that

---

6  This case is distinguishable from *Janky v. Batistatos*, 559 F. Supp. 2d 923, 931-32 (N.D. Ind. 2008). In that case,

term to mean a total release of all claims MGI and Plaintiff brought or could have brought against the other at the time of settlement. As is usually contemplated in a global release, the Court and parties understood that the release would not simply be between the two corporate entities that were represented at the settlement conference, but any related parties, including agents of MGI. Simply put, the intention of MGI and Plaintiff in agreeing to the mutual global release was for both parties to be certain they were done litigating against each other any claims that existed until that point. The settlement agreements exchanged following the settlement conference clearly demonstrate this understanding. Both drafts include identical language that would release "MGI, its predecessors, successors, affiliates, and parents, and collectively, their respective former, current and future directors, officers, employees, ***agents***, representatives, shareholders, attorneys, fiduciaries, insurers, and assigns (the "MGI Released Parties)." [Dkt 250-2 at ¶ 4 (emphasis added).] However, Plaintiff attempted to carve Brand out of the release completely, writing:

> IT IS EXPRESSLY UNDERSTOOD by MGI that, notwithstanding [Plaintiff's] position in the Lawsuit that Jonathan Brand was at all relevant time an agent of MGI, the term "MGI Released Parties" does not include and cannot be construed to include Jonathan Brand, and it is further expressly understood by MGI that Svanaco does not release any claims it has, had or may have had against Jonathan Brand, whether brought in the Lawsuit or elsewhere.

[Dkt. 250-2 at ¶ 4.]

The general carve-out for all claims against Brand was not agreed to at the settlement conference and was not included in the terms sheet signed by the parties. It is not an enforceable provision of the settlement reached before the Court. However, the Court recommends that all

---

the court held that the term "mutual global release" was "not definite enough to be enforceable." *Id.* at 931. In that case, the court had not been involved with a settlement conference with the parties, and therefore did not have an understanding of the negotiations surrounding the mutual global release. Here, the Court spent several hours negotiating the agreement that resulted in the terms sheet, and believes the parties had a sufficiently definite understanding of what the term meant, such that it is enforceable.

claims against Brand should be released to the extent that Brand was acting within the scope of his agency. As part of the mutual global release, the parties agreed to release all claims they brought (or could have brought) against each other and the exhaustive list of potential related entities recited above, including agents. Therefore, to the extent Brand was acting as an agent of MGI, Plaintiff agreed to release any claims against him.

Again, this does not neatly end the issue of whether Plaintiff can continue to pursue claims against Brand because it is still a live issue in this matter the extent to which Brand's activities were within the scope of his agency relationship with MGI. That issue was explicitly left undecided in Judge Wood's summary judgment opinion. [Dkt. 237 at pp. 28-29.] Moreover, Brand cannot be dismissed from the case because there are some actions Brand took that Judge Wood specifically determined were outside the scope of his agency, such as the dedicated-denial-of-service attack he perpetrated against Plaintiff. [Dkt. 237 at p. 24.] These actions would plainly not be part of the mutual global release MGI and Plaintiff agreed on. As such, Plaintiff is free to pursue its claims against Brand moving forward. For his part, Brand may argue that his alleged actions were taken within the scope of his agency relationship with MGI and he has been released from liability for those actions.[7] In sum, the Court recommends the settlement agreement be enforced to the extent it calls for a "mutual global release," with the understanding that any such provision: 1) includes a release of "MGI, its predecessors, successors, affiliates, and parents, and collectively, their respective former, current and future directors, officers, employees, agents, representatives, shareholders, attorneys, fiduciaries, insurers, and assigns (the "MGI Released Parties);" 2) includes a release of all claims against Brand based on actions he took that were within the scope of his

---

[7] The Court recognizes that this may force Plaintiff to take a conflicting position from its previous argument at the summary judgment stage (*i.e.*, that Brand acted as an agent of MGI, thereby creating vicarious liability for MGI for Brand's actions), but that is for Brand to argue at the appropriate time.

agency relationship with MGI; 3) does not release any claims against Brand that are based on actions he took that were outside the scope of his agency relationship with MGI; and 4) does not include the general carve-out for Brand included in Plaintiff's draft, which is not an enforceable provision of settlement agreement manifested in the terms sheet.

Finally, MGI argues that Plaintiff's "non-disparagement clause is inconsistent with the agreement reached on February 5" because it "would leave MGI susceptible to claims of a breach of the proposed settlement agreement should Brand make any unilateral statements or take any action of a disparaging nature or that 'reflect negatively' on" Plaintiff. [Dkt. 278 at p. 5.] This is incorrect. The proposed clause states that "MGI agrees it will not make any statements, either oral or written, and will not take any other actions that disparage or reflect negatively on any or all of the Svanaco Released Parties." [Dkt. 205-2 at ¶ 8.] Crucially, the non-disparagement clause does not bind the "MGI Released Parties" (defined above in the release), but only MGI itself. There is no fair reading of this clause that could lead to the conclusion that MGI will be held liable for any actions by Brand, and the Court believes the language hews closely to the mutual non-disparagement clause the parties agreed to at the settlement conference. It is certainly closer to the agreement than MGI's proposed non-disparagement clause, which is unilateral and imposes no duties on MGI whatsoever. The Court recommends the settlement agreement be enforced as to the mutual non-disparagement clause and that MGI be ordered to agree to the non-disparagement clause drafted by Plaintiff, which is consistent with the terms sheet.

## II. Motion for Relief from Compliance with Settlement Agreement

The Court also recommends that MGI's Motion for Relief from Compliance with the February 5, 2020 Agreement [279] be denied. MGI's motion argues that economic hardship caused by the COVID-19 pandemic constitutes a defense to performance of the contract in the form of

impossibility, impracticability, or frustration of purpose.

This argument has been raised by other parties attempting to be excused from their performance under a settlement agreements in the wake of COVID-19, and has been universally rejected by other courts. *See Lantino v. Clay LLC*, 2020 WL 2239957, at *3 (S.D.N.Y. May 8, 2020); *Federal Trade Commission v. A.S. Research, LLC*, 2020 WL 4193507, at *2-3 (D. Colo. July 21, 2020); *Belk v. Le Chaperon Rouge Co.,* 2020 WL 3642880 (N.D. Ohio July 6, 2020). This Court believes that *Lantino* is particularly instructive. In that case, the defendants were the owners and operators of fitness centers in the New York metropolitan area; after a settlement conference, the parties "agreed to a total settlement fund in the amount of $300,000.00, to be paid out over 25 months, but, in the event of a default, the settlement amount would be increased to $1,000,000.00, pursuant to a Consent Judgment." *Lantino*, 2020 WL 2239957, at *1. The class action settlement was approved by the Court on November 5, 2019, and called for defendants to "pay the $300,000.00 Settlement Amount by an initial payment of $50,000.00, plus monthly installments of $8,695.65 (less applicable withholdings) for 23 months." *Id.* at *2. The settlement agreement appended a consent judgment form and stated that "[i]n the event of default in payments under the Settlement Agreement, the Consent Judgment provides for the entry of judgment in the amount of $1,000,000.00, less any payments previously made." *Id.* Plaintiff filed a consent judgment on April 17, 2020; defendants opposed the consent judgment, admitted they missed their payments, and argued "their performance should be excused based upon the doctrine of impossibility because of their inability to pay, ostensibly as a result of the COVID-19 pandemic and Governor Cuomo's PAUSE Executive Order." *Id.* at *3. Citing case law holding "'where impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused,'" the court found that "[a]t

best, Defendants have established financial difficulties arising out of the COVID-19 pandemic and the PAUSE Executive Order that adversely affected their ability to make the payments called for under the Settlement Agreement. As such, Defendants' performance under the Settlement Agreement is not excused." *Id.* at \*3 (quoting *407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 23 N.Y.2d 275, 281 (1968)).

The law in Illinois is substantially the same as the above-quoted New York law. *See United States v. Moore Am. Graphics, Inc.*, 1989 WL 81799, at \*5 (N.D. Ill. July 10, 1989) ("the financial difficulty in performing an obligation pursuant to a contract cannot by itself operate to extinguish that obligation" for purposes of the impossibility or impracticability defense); *see also*, *Ner Tamid Congregation of North Town v. Krivoruchko*, 638 F. Supp. 2d 913, 278-28 (N.D. Ill. 2009). Here, like the defendants in *Lantino*, MGI is arguing that the executive orders signed by Connecticut's governor related to COVID-19 have made it financially infeasible for MGI to make the payments it agreed to in the terms sheet. The Court agrees with the *Lantino* court that such economic hardship is not sufficient to excuse performance of MGI's contractual obligations pursuant to an impossibility or impracticability defense, and rejects that argument. As for a frustration of purpose defense, it requires that "the value of counterperformance has been totally or nearly destroyed by the frustrating event." [Dkt. 279 at p. 9 (citing *United States v. Southern Electric Cooperative, Inc.*, 869 F.2d 310, 315 (7th Cir. 1989)).] MGI has not presented any argument on how Plaintiff's counterperformance has been destroyed by COVID-19; Plaintiff can still release MGI from Plaintiff's claims and agree not to disparage MGI. The Court rejects this argument as well. Because MGI has failed to prove any of the defenses it asserts to performing the settlement agreement manifested in the terms sheet, the Court recommends that MGI's motion be denied.

## CONCLUSION

The Court hereby recommends that Plaintiff's Motion to Enforce Settlement Agreement [Dkt. 250] be granted in part and denied in part as discussed above, and that Defendant Marty Gilman's Cross-Motion for Relief from Compliance with the February 5, 2020 Agreement [Dkt. 279] be denied. Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. Unless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient. All matters relating to the referral of this action are resolved; case returned to the assigned judge. Referral terminated.

Entered: 9/24/2020

_____
Susan E. Cox,
United States Magistrate Judge