IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SVANACO, INC. d/b/a americaneagle.com,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN BRAND,<br>MARTY GILMAN, INC.,<br><br>Defendants. | ) | No. 1:15-cv-11639<br>Hon. Andrea R. Wood<br>Mag. Judge Cox |

**DEFENDANT MARTY GILMAN, INC'S OBJECTIONS TO MAGISTRATE COX'S REPORT AND RECOMMENDATION**

Defendant, Marty Gilman, Inc. ("MGI"), hereby submits the following objections to Magistrate Judge Cox's Report and Recommendation pursuant to Fed. R. Civ. P. 72.

**INTRODUCTION**

1. This case calls to mind Magistrate Judge Denlow's statement that "close only counts in horseshoes not settlement agreements. The parties in this case have come close to a settlement agreement, but did not reach one." *IMI Nordgren, Inc. v. D&D Tooling Mfg., Inc.*, 306 F. Supp.2d 794, 798 (N.D. Ill. 2004). In this case, despite the best intentions of the parties, a full-day settlement conference, and subsequent exchanged drafts of written agreements, it has become clear that there was not a meeting of the minds. If anything, Judge Cox's Report and Recommendations make that much clear. Accordingly, Svanaco's motion to enforce should be denied. In the alternative, this Court should grant MGI's motion for relief.

2. On September 24, 2020, Magistrate Judge Cox issued a Report and Recommendation on Svanaco's Motion to Enforce Settlement Agreement and MGI's Cross-Motion for Relief from Compliance with the February 5, 2020 term sheet. (Dkt. 285)

Respectfully, MGI submits that Judge Cox erred, and, pursuant to Fed. R. Civ. P. 72, MGI objects to Magistrate Judge Cox's Report and Recommendation as to both motions.

3. ***First***, the Report and Recommendation impermissibly narrows the scope of the mutual global release to exclude claims against Jonathan Brand. During the February 5, 2020 settlement conference, MGI agreed to settle ***all*** claims in exchange for a release of ***all*** parties as part of the ***global*** release to bring this litigation to an end. That is very different from what is reflected in the Report and Recommendation. In short, as construed by Judge Cox, the "mutual global release" is fundamentally different from what MGI thought it was agreeing to on February 5. On this point, the Report and Recommendation demonstrates that, as much as the parties may have believed they had an agreement on February 5, the term "mutual global release" has proven to simply be too ambiguous and indefinite to manifest a meeting of the minds.

4. ***Second,*** the Report and Recommendation incorrectly creates a non-disparagement clause that was not contemplated by the February 5, 2020 term sheet. The Recommendation allows for MGI to be perpetually vulnerable to future lawsuits from Svanaco for conduct attributable to Jonathan Brand. Here again, the Report and Recommendation underscore that the phrase "non-disparagement" is too ambiguous to be capable of enforcement without (as the parties intended to do here) further refinement in a written agreement.

5. ***Third,*** the Report and Recommendation did not address any of the evidence presented as part of the Declaration of Neil Gilman as to the effects of COVID-19 upon MGI's operations and the impossibility of MGI to perform under the February 5, 2020 term sheet. Indeed, the Report and Recommendation did not address many aspects of the impossibility of performance arguments due to the COVID-19 epidemic. Instead, the Report and Recommendation relies solely

on a case from New York state interpreting New York law for denying MGI's cross motion without addressing the merits as presented.

## BACKGROUND FACTS

6. On February 5, 2020, the Judge Cox conducted a settlement conference. That settlement conference was undertaken in good faith by all parties. At its conclusion, it appeared that the parties had a settlement agreement in principle that was memorialized in open court by way of a written "Settlement Terms" sheet signed by the parties through their respective counsel. (Dkt. 278 at Ex. A) The Settlement Terms were as follows:

1) A defined settlement amount which MGI agreed to pay Plaintiff over the course of twelve months beginning on April 1, 2020;

2) Mutual Confidentiality Agreement;

3) Mutual Non-Disparagement Clause;

4) Mutual Global Release; and

5) Agreement to file a Joint Stipulation to Dismiss within 5 days upon the "execution of a settlement agreement."

(Dkt. 278 at Ex. A) Importantly, as reflected in the term sheet, the parties intended to draft a written settlement agreement that would provide more definition on the terms outlined above.

7. On February 19, 2020, Svanaco sent MGI a proposed draft agreement which contained certain terms that were not agreed to on February 5, 2020, nor were they discussed or proposed. (Dkt. 278 at Ex. B) Had Svanaco identified these terms during the February 5 conference, it may have scuttled the agreement itself. Svanaco's proposed settlement agreement contained the following language/terms which were not agreed to on February 5, 2020:

- A remedy provision, wherein, if MGI misses a payment, Svanaco will be entitled to a default judgment and to conduct a prove-up hearing on its underlying causes of action against MGI in the Second Amended Complaint. (*See* Dkt. 278 at Exhibit B ¶ 3)

- An exemption as to Co-Defendant Jonathan Brand ("Brand") from the settlement agreement and release. (*Id* at ¶ 4)
- A non-disparagement provision that would make MGI potentially liable for any disparaging words or actions of Jonathan Brand. (*Id.* at ¶ 8)

8. The first provision (*i.e.*, the default judgment remedy), in particular, was onerous and something never discussed on February 5. On February 27, 2020, the parties appeared before Judge Wood and reported that the parties had "reached a settlement agreement in principle but require additional time to finalize settlement documents." (Dkt. 247)

9. As MGI considered Svanaco's proposed agreement, the realities of the onset of COVID-19 began to grip the nation and adversely affected MGI's business in ways that were not foreseeable (or, indeed, imaginable) on February 5. On March 16, 2020 (which was the first day of the statewide Illinois shutdown), MGI provided Svanaco with its own draft settlement agreement, which reflected the February 5 terms, but included an adjusted payment schedule to reflect the new reality of COVID and its impact on MGI's business. (Dkt. 278 at Ex. C) Svanaco rejected MGI's proposed settlement agreement in its entirety.

10. On March 25, 2020, Svanaco filed its motion to enforce. (Dkt. 250) Notably, Svanaco did not seek to enforce the February 5 terms. Rather, Svanaco sought to enforce its ***own*** February 19, 2020 draft agreement. MGI responded to the motion to enforce and filed a simultaneous cross-motion to set aside the February 5, 2020 term sheet. (Dkts. 278, 279) Those motions were fully briefed. As part of that briefing, MGI submitted a supporting declaration from Neil Gilman. (Dkt. 281)

11. On September 24, 2020, Judge Cox issued a Report and Recommendation as to the Svanaco's Motion to Enforce and MGI's Cross-Motion for Relief from the February 5, 2020 term sheet. (Dkt. 285) Judge Cox recommended that Svanaco's Motion to Enforce be granted in part

and denied in part, and that MGI's Cross Motion for Relief be denied in its entirety. Specifically, Judge Cox excluded Defendant Brand from the mutual global release clause of the February 5, 2020 term sheet and adopted Svanaco's non-disparagement clause. Additionally, as to the Cross-Motion, Judge Cox did not cite to or mention any evidence presented as to the effects of COVID-19 on the impossibility of MGI's performance, and did not address the legal arguments made in support of MGI's impossibility, impracticability and frustration defenses. According, MGI submits the following objections.

## <u>STANDARD OF REVIEW</u>

12. The District Court must determine *de novo* any portion of a magistrate judge's ruling that has been properly objected to. The District Court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). *See also Lynchval Systems v. Chicago Consulting Actuaries, Inc.*, 1996 WL 735586 *4 (N.D. Ill. 1996).

## <u>OBJECTIONS TO REPORT AND RECOMMENDATION AS TO SVANACO'S MOTION TO ENFORCE</u>

13. MGI objects to two portions of the Report and Recommendation that address the mutual global release and mutual non-disparagement provisions of the February 5, 2020 term sheet. In determining whether the parties reached an enforceable settlement agreement, the Court applies state contract law. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007). "[B]ecause a settlement agreement is a limitation on the rights of the parties, any such limitation must be discussed and agreed to by the parties for that term to be an enforceable part of that agreement." *Dhaliwal v. Woods Div., Hesston Corp.*, 1990 WL 53163, at *4 (N.D. Ill. 1990), aff'd, 930 F.2d 547 (7th Cir. 1991). Under Illinois law, the elements of contract formation are offer and acceptance, consideration, and definite and certain terms.

*Waste Mgm't of Ill., Inc.*, 348 Ill. App. 3d 929, 940 (2004). The requirement that contract terms be definite and certain is important, and courts applying Illinois law will decline to find agreements where it is clear that the terms are not "definite and certain" enough to demonstrate a meeting of the minds. *See*, *e.g.*, *IMI Nordgren, Inc.*, 306 F. Supp. 2d at 802 ("If there is ambiguity in an agreement it will prevent the enforcement of a contract where the ambiguity affects the material terms of the contract.") (internal quotes and citations omitted).

14. In this case, Judge Cox incorrectly concluded that the terms "mutual" and "global" in the "mutual global release" clause were meant to exclude claims against Defendant Jonathan Brand because the Court "understood that term to mean a total release of all claims MGI and Plaintiff brought or could have brought against the other at the time of settlement." (Dkt. 285 at 7-8) Respectfully, though, Judge Cox's understanding does not reflect what was agreed to in writing. The February 5, 2020 term sheet provides for a mutual global release and that the case would be dismissed within 5 days after the "execution of a settlement agreement." The term "global" meant that all claims would be released. Similarly, the term "mutual" meant that both parties at the settlement (*i.e.* Svanaco and MGI) would be releasing parties. The term "mutual" was not intended (as was presumed by Judge Cox) to limit the term "global" so that the only released parties were Svanaco and MGI. Indeed, there is no qualifier on the term sheet to permit an understanding that the case would be allowed to proceed against Jonathan Brand (which would, in turn, potentially require continued participation in litigation by MGI and Mr. Gilman). The term sheet states that the release would be ***global*** which, by definition, means that entire case would be dismissed within 5 days after the "execution of a settlement agreement."

15. "Illinois follows the objective theory of intent whereby the written records of the parties' actions—rather than their subjective mental processes—drive the inquiry." *Beverly v.*

*Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016). Here, MGI and Svanaco agreed in writing that the releases would be global. There was no mention of a carve-out of claims against Jonathan Brand. Indeed, as Judge Cox correctly ruled, Svanaco's insistence on a "carve-out" of Jonathan Brand to the "mutual global release" was not contemplated by the parties when the Agreement was reached because such a term "was not included in the terms sheet signed by the parties." (Dkt. 285 at 8) Similarly, Svanaco cannot create a qualifier to the term "global" after the fact because any such qualifier was not in the settlement terms. *See Janky v. Batistatos* 559 F. Supp 2d 923, 932 (N.D. Ind. 2008) ("a court may not make a new contract for the parties or supply missing terms under the guise of construing a contract").

16. But Judge Cox's solution with respect to the parties' disagreement as to the scope of the "mutual global release" is similarly ungrounded in the February 5 term sheet. By crafting a term that purports to differentiate Brand's independent conduct and Brand's conduct as an "agent" of MGI's, Judge Cox has deviated from the term sheet. Nothing in the term sheet provides a blueprint for Judge Cox's interpretation. Indeed, MGI would never have agreed to such a provision, and there is no evidence that MGI did agree to such a provision. That is because such a provision will open the door wide to future litigation between Svanaco, Brand and MGI. Svanaco has already asserted that it believes Brand was acting as "MGI's agent" in numerous circumstances where Brand was clearly ***not*** acting in such a capacity. In the event Svanaco brings any claim against Brand, it seems likely that there will be a dispute as to the nature of Brand's status as an "MGI agent" with respect to the conduct at issue.

17. MGI also objects to the Judge Cox's adoption of Svanaco's non-disparagement language. Svanaco's non-disparagement clause is inconsistent with the agreement reached on February 5. Here again, Svanaco's proposed (not agreed to) language would open the door to

future litigation, and leave MGI susceptible to claims of a breach of the proposed agreement should Brand make any unilateral statements or take any action of a disparaging nature or that "reflect negatively" on Svanaco, Svanaco's owners, officers, *etc*. Further, the term "reflect negatively" appears nowhere in the term sheet, and is so vague and open to interpretation that Svanaco would be able to claim that ***any*** statement or action by ***anyone*** possibly connected with MGI could reflect negatively on Svanaco. Svanaco's non-disparagement clause is not definite enough and is inconsistent with the Settlement Terms. *See United States v. Orr Const. Co.*, 560 F.2d 765 (7th Cir. 1977) (a settlement term that "could have any number of meaning depending on the view of the person interpreting it" is unenforceable.).

18. If anything, Judge Cox's construction of the two terms above (both of which are materially different from what MGI agreed to – or at least thought it was agreeing to – on February 5) demonstrates that the February 5 term sheet did not reflect a true meeting of the minds. There are many instances in which parties intend to reach agreement and believe they have reached agreement, only to find out that they have not reached agreement when it comes time to reduce the agreement to writing and to supply the details that give flesh to the bones of a term sheet. That is precisely why the parties in this case did not rest on the February 5 term sheet, but made it clear they intended to reduce their agreement to writing. Unfortunately, in this case, despite the parties' best intentions, it seems clear that the terms such as "mutual global release" and "mutual non-disparagement" were not sufficiently definite to create a meeting of the minds. That fact, while not clear on February 5, seems clear now in light of the parties' competing draft agreements, and the substantial briefing on their cross motions. (Dkts. 250, 278-281, 284).

19. Courts have consistently refused to enforce settlement agreements when the "agreed" material terms prove to be uncertain or indefinite. *IMI Nordgren, Inc.*, 306 F.Supp.2d at

802-803 (a magistrate brokered agreement unenforceable where a material term was not mutually agreed to by ***both*** parties sending the case back to the trial court for further proceedings); *S. Chancellor v. Select Portfolio Servicing*, 869 F.3d 506 (7th Cir. 2017) (case remanded for an evidentiary hearing where there is no evidence that one party had knowledge it was agreeing to release non-parties to the litigation); *Bradbury v. Morris Hospital*, 2019 WL 2387577 (case returned to trial court after a motion to enforce a magistrate brokered agreement denied when terms were found too vague without any evidence of mutual agreement on material terms).

20. As in those cases, the Report and Recommendation here makes it clear that there was no agreement reached as to the meaning of the mutual global release and mutual non-disparagement. Without an agreement as to those material terms there is no enforceable agreement and this matter should proceed to trial.

**OBJECTIONS TO REPORT AND RECOMMENDATION AS TO MGI'S CROSS-MOTION FOR RELIEF**

21. MGI also objects to Judge Cox's recommendation to deny MGI's motion for relief from the February 5, 2020 term sheet. (Dkt. 285) Judge Cox failed to address the overwhelming evidence presented that it would be impossible or impracticable for MGI to perform under the agreement. Instead, Judge Cox relied solely on a New York case which applies New York law for the proposition that inability to pay due to COVID-19 is not enough to excuse performance under the terms of a settlement agreement. *Lantino v. Clay LLC*, 2020 WL 2239957 (S.D.N.Y. May 8, 2020). However, Judge Cox did not cite or rely on the body of case law in Illinois which recognizes MGI's defenses to performance, especially inability to pay. *See YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 403 Ill.App.3d 1, 8 (1st Dist. 2010).

22. The doctrine of impossibility of performance as a ground for rescission of a contract arises when events have made it impossible for one side to perform under the contract. *YPI 180*

*N. LaSalle*, at 6. The doctrine of impossibility of performance in contract is recognized in Illinois as a basis to excuse one party from performing under a contract "where performance is rendered objectively impossible due to destruction of the subject matter of the contract or by operation of law." *Id. citing Leonard v. Autocar Sales & Service Co.*, 392 Ill. 182, 187 (1945). The doctrine of impossibility is an "off-the-rack" provision that governs only if the parties have not drafted a specific assignment of the risk otherwise assigned by the provision. *Commonwealth Edison v. Allied-General Nuclear Services,* 731 F. Supp 850, 855 (N.D. Ill 1990). The party to a contract seeking to rescind must show that events or circumstances which rendered performance impossible "were not reasonably foreseeable at the time of contracting." *Illinois-American Water Co. v. City of Peoria*, 332 Ill. App. 3d 1098, 1106 (3rd Dist. 2002). If an event were foreseeable at the time of contract, it must be provided for in the terms of the contract or else impossibility does not excuse performance. *YPI 180 N. LaSalle*, at 7. If the event was unforeseeable, the doctrine of impossibility will apply provided that the affected party does not have the ability to "remove the obstacle to performance." *Id.* at 8.

23. The doctrine of commercial impracticability allows for rescission of a contract when there is an: (1) an unanticipated circumstance, (2) that was not foreseeable, (3) to which the other party did not contribute, and (4) to which the party raising the defense has tried all practical alternatives. *Bank of America, N.A. v. Shelbourne Development*, 732 F. Supp 2d 809, 827 (N.D. Ill. 2010). "The rationale for the defense of commercial impracticability is that the circumstance causing the breach has rendered performance so vitally different from what was anticipated that the contract cannot be reasonably thought to govern." *Waldinger Corp. v. CRS Group Eng'rs, Inc.*, 775 F.2d 781, 786 (7th Cir.1985). The key to the analysis of commercial impracticability is whether or not the circumstance was foreseeable at the time of contract. *Id.*

24. Foreseeability is a common component to the doctrines raised by MGI seeking relief from the February 5, 2020 settlement agreement. There is no question that the onset of COVID-19 and the effects that it had on the world (let along MGI's business operations) were entirely unforeseeable. Indeed, three days before the settlement conference on February 2, 2020, Super Bowl LIV was played in Miami with 62,000 fans in attendance and tens of millions of Americans gathering in large groups to watch the game in bars and homes. On February 12, 2020, major league baseball spring training started with pitchers and catchers reporting to camp. It wasn't until March 11, 2020 that the National Basketball Association suspended its season. On February 5, 2020, COVID-19 and the effects upon business were completely unforeseen and unforeseeable to ***everyone***.

25. Since COVID-19 took hold in the United States in March 2020, there is sparse case authority discussing the impact of COVID-19 and the doctrines for rescission of a contract. MGI is unaware of any Illinois published opinions on point. Ohio contract law recognizes the same common law doctrine of impossibility that Illinois has adopted. A District Court in Ohio ruled that a defendant which operated a private school that entered into a settlement agreement on March 12, 2020 (*i.e.*, the very same day that Ohio Governor Mike DeWine ordered Ohio schools closed) could not assert impossibility to rescind the settlement agreement because the effects of COVID-19. But the Court's decision on that case turned on foreseeability, and the Court found the impacts of COVID on defendant's business were "reasonably foreseeable." *Belk v. Le Chaperon Rouge Co.* 2020 WL 3642880 (N.D. OH July 6, 2020).

26. Unlike the facts in *Belk*, the exact opposite is true here. MGI entered into a settlement agreement on February 5, 2020 more than a month before the COVID-19 pandemic caused Connecticut Governor Lamont to limit the operations of factories on March 20, 2020.

There was nothing foreseeable on February 5 that could have prevented MGI from performing its payment obligations as stated in the Settlement Terms. If MGI had not re-purposed one of its factories to making PPE, the whole company would have been shut down until May 20, 2020. That type of action is unprecedented and unforeseeable.

27. State and federal courts in Illinois have provided relief from contracts in other situations in which government action has made it difficult or impossible to legally comply with a party's contractual obligations. In *Patch v. Solar Corp.*, 149 F.2d 558 (7th Cir. 1945), the Seventh considered a situation in which the defendant had contracted in 1937 to manufacture washing machines, but stopped doing so in 1942 due to wartime manufacturing restrictions that banned the manufacture of washing machines. The plaintiff sought to terminate the contract, but the Seventh Circuit refused to permit that, and instead found that performance was suspended during the pendency of World War II. Writing for the Seventh Circuit, future Supreme Court Justice Sherman Minton wrote:

> Whether you call it impossibility of performance or frustration, the result is the same. In either event the court will imply a condition excusing both parties from performance, and the contract may be wholly dissolved or operation under the contract suspended, depending on the facts of the particular case.

*Id.* at 560.

28. *Patch* is not an outlier. In *Fisher v. U.S. Fidelity & Guaranty Co.,* 313 Ill. App. 66 (1st Dist. 1942), a contractor was relieved of performing under a contract for construction of a movie theater where the project was in violation of an ordinance. Similarly, in *Moffitt v. City of Rock Island*, 77 Ill. App. 3d 850 (3rd Dist. 1979), the State of Illinois assumed control of a road rendering it impossible for the City of Rockford to comply with an agreement to complete the project within five years. The court held that Rockford was relieved of its obligations under the agreement to complete the road due to the supervening impossibility of performance. In language

applicable to the COVID-19 Orders issued by Connecticut Governor Lamont and other governors, the court in *Moffit* stated:

> The "takeover" by the State was wholly unforeseeable and not in any manner the fault of the City. Courts now grant relief to parties involved in this situation by discharging promisor of his obligation rendered impossible to perform where a supervening impossibility of performance occurs.

*Id.* at 854.[1] The factors that led to the decisions in *Patch*, *Moffit* and *Fisher* are all present here. The COVID orders were unforeseen and unforeseeable and not the fault of any party. The stay at home lockdown orders, the social distancing requirements, the closing of non-essential businesses, the quarantine requirements, the school closures, the closure of retail shopping centers, movie theaters and sporting venues, the restrictions on social gatherings, the closure of restaurants and bars are all unprecedented in modern times and Illinois courts have granted relief under contracts in less extreme circumstances in the past. Indeed, the doctrine of impossibility has been applied to contracts for nearly a century. *See Levy v. Johnston & Hunt*, 224 Ill. App. 300 (1st Dist. 1922) (excusing tenant's performance under a lease where tenant was a "saloon" and its operation was barred under Prohibition).

29. MGI presented evidence to show it lacks sufficient assets or equity to pay the under the settlement which renders performance impossible. (Dkts. 279-281) In her Report and Recommendations, Judge Cox did not address this information. In short, enforcement of the February 5, 2020 terms would cause MGI to close its doors leaving residents of Bozrah, Connecticut without two operational factories and 42 people with no work. *See YPI 180 N. LaSalle*

---

[1] *See also Harmswood Stables North, Inc. v. Semrow*, 100 Ill. App. 3d 219 (1st Dist. 1981) (contract to repair building discharged because extraordinary snowfall of 1979 made it impossible to comply with the contractual obligation to repair building); *Waldinger Corp. v. CRS Group Engineers, Inc., Clark Dietz Div.*, 775 F.2d 781 (7th Cir. 1985) (contractor excused from performing contract pursuant to doctrine of commercial impracticability where it was unable to obtain equipment specified in contract, and such event was unforeseeable).

at 8 (impossibility to pay is demonstrated by establishing a record that the moving party does not have money to perform under the agreement). Impossibility to pay is an allowable defense for relief from performance from a settlement agreement.

30. Judge Cox did not address any of the evidence presented or provide any meaningful analysis into the application of Illinois law to the evidence presented. In fact, she did not mention the detailed declaration and evidence provided by Neil Gilman which is dispositive of the issue presented. It does not appear that she considered the evidence at all. Her failure to do so was error. Consideration of such evidence demonstrates that the standard of impossibility is demonstrated here.

WHEREFORE, MGI respectfully objects to the Report and Recommendation of Judge Cox and requests this Court to:

1. Deny Svanaco's motion to enforce, and also find that the February 5 term sheet's terms are not sufficiently definite and certain to constitute a meeting of the minds;
2. In the alternative, grant MGI's motion for relief from the February 5, 2020 term sheet due to the impossibility or impracticability of performance; and
3. Reinstate this matter and set it for trial.

Dated: October 22, 2020

Respectfully submitted,

/s/ Timothy D. Elliott

Timothy D. Elliott
Raymond J. Sanguinetti
RATHJE WOODWARD LLC
300 E. Roosevelt Road, Ste. 300
Wheaton, IL 60187
Phone (630) 668-8500
Fax (630) 668-9218
Email: rsanguinetti@rathjewoodward.com

**CERTIFICATE OF SERVICE**

On October 22, 2020, I, Timothy D. Elliott, an attorney, certify that I served a copy of the foregoing Objections to the Report and Recommendation on all attorneys/parties of record via the Court's ECF system.

s/ Timothy D. Elliott
Timothy D. Elliott