**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SVANACO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15-cv-11639 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| JONATHAN BRAND and | ) | |
| MARTY GILMAN, INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| MARTY GILMAN, INC., | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SVANACO, INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

## ORDER

Plaintiff/Counter-Defendant's motion to enforce settlement agreement [250] is granted in part and denied in part. Defendant/Counter-Claimant's motion for relief from compliance [279] is denied. The Court overrules Defendant/Counter-Claimant's objections [289] to the Magistrate Judge's Report and Recommendation, adopts the Report and Recommendation [285], and finds that the parties reached a binding settlement agreement with a mutual global release and non-disparagement provision as clarified below. Within 30 days of this Order, the parties shall come into compliance with the settlement agreement. See the accompanying Statement for details.

## STATEMENT

The Court presumes familiarity with its prior opinion resolving the parties' cross-motions for summary judgment (Dkt. No. 237), which presents the factual background of this case in greater detail, and so here will repeat only the facts pertinent to the present motions.

As alleged in its complaint, Plaintiff Svanaco, Inc. ("Svanaco") creates, hosts, and maintains websites for businesses and governmental bodies. Defendant Marty Gilman Inc. ("MGI"), under the trade name Gilman Gear, sells sports equipment and related products. In 2012, MGI hired Svanaco to design and redevelop its website, agreeing to pay Svanaco $50,000 in three equal installments. The final payment would have been due when the website launched.

MGI refused to make the final payment, however, citing concerns about the adequacy of Svanaco's work and whether Svanaco intended to complete the website following the final payment.

In October 2015, MGI posted public advertisements seeking a web designer. Defendant Jonathan Brand responded, and MGI asked him to evaluate the extent of Svanaco's work on the website and told him that it wanted Svanaco to be "shamed." Brand subsequently launched more than a dozen websites that included variations of Svanaco's trade name in their URLs and made negative statements about Svanaco. He also submitted a complaint in MGI's name to the Better Business Bureau. Svanaco was targeted by a distributed denial-of-service attack, which disrupted some websites hosted by Svanaco for twenty-five minutes. Svanaco also received multiple live-chat messages telling it to resolve its dispute with MGI and threatening to attack Svanaco, its brand, and its clients. Svanaco attributed these attacks and messages to Brand, which MGI disputed. Svanaco further alleged that its employees spent at least 85 hours responding to the attacks and that potential clients decided not to work with Svanaco because of Brand's smear campaign.

Based on this alleged sequence of events, Svanaco asserted claims in this lawsuit against MGI and Brand pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, as well as several causes of action under state law. Svanaco and MGI also asserted breach of contract claims against one another. The Court granted summary judgment in favor of MGI with respect to Svanaco's Anticybersquatting Consumer Protection Act and Computer Fraud and Abuse Act claims, but the parties' remaining claims survived. (*See* Dkt. No. 237.)

MGI and Svanaco then met with the Magistrate Judge for a settlement conference. On February 5, 2020, the parties reached an agreement in principle to settle the case, at which point they signed a terms sheet setting forth the material terms of their agreement. The one-page terms sheet states that MGI must pay Svanaco a settlement sum over twelve months, making monthly payments starting on April 1, 2020. (Pl.'s Mot. to Enforce, Ex. A, Terms Sheet, Dkt. No. 250-1.) It also provides for: "(2) mutual confidentiality agreement; (3) mutual non-disparagement clause; (4) mutual global release." (*Id.*) Finally, the terms sheet calls for a joint stipulation to dismiss the case without prejudice following the execution of a settlement agreement, to convert to dismissal with prejudice thirty days after the final payment's due date. (*Id.*)

After signing the terms sheet, Svanaco sent MGI a draft settlement agreement and release. The draft agreement contained more detailed terms, including a cure period for missed payments and a provision for the entry of judgment if MGI failed to cure. (Pl.'s Mot. to Enforce, Ex. B, Mutual Release & Settlement Agreement ("Svanaco Draft") ¶¶ 2–3, Dkt. No. 250-2.) It also included a global release of "MGI, its predecessors, successors, affiliates, and parents, and collectively, their respective former, current and future directors, officers, employees, agents, representatives, shareholders, attorneys, fiduciaries, insurers, and assigns (the 'MGI Released Parties')." (*Id.* ¶¶ 4–5.) However, this release excluded Brand, stating that the agreement "does not include and cannot be construed to include Jonathan Brand, and it is further expressly understood by MGI that Svanaco does not release any claims it has, had or may have had against Jonathan Brand, whether brought in the Lawsuit or elsewhere." (*Id.* ¶ 4.) Finally, Svanaco's proposed non-disparagement clause stated, "MGI agrees that it will not make any statements,

either written or oral, and will not take any other actions that disparage or reflect negatively on [Svanaco]," with a reciprocal clause applying to Svanaco. (*Id.* ¶ 8.)

In response to Svanaco's draft, MGI proposed different terms, some of which deviated from the terms sheet. Its proposal delayed the first payment by three months to July 1, 2020. (Def.'s Resp., Ex. C, Mutual Release & Settlement Agreement ("MGI Draft") ¶ 1, Dkt. No. 278.) MGI's draft also called for Svanaco to release "any claims relating to Jonathan Brand or any postings, statements or actions taken by Brand" (*id.* ¶ 2), and included a one-sided non-disparagement clause preventing Svanaco from disparaging MGI but imposing no duties on MGI (*id.* ¶ 6).

The parties were unable to reconcile their differences. And so, Svanaco moved to enforce the settlement on the terms it had proposed in its draft agreement. (Dkt. No. 250.) MGI, in turn, moved for relief from the settlement agreement, contending that the COVID-19 pandemic made it impossible or impracticable for it to perform under the contract and negated the value of Svanaco's performance. (Dkt. No. 279.) This Court referred the motions to the Magistrate Judge. After full briefing, the Magistrate Judge issued a Report and Recommendation, recommending that Svanaco's motion be granted in part and enforcing the settlement consistent with the parties' signed terms sheet but excluding new terms to which the parties had not agreed at the settlement conference. (Dkt. No. 285.) The Magistrate Judge also recommends that the Court deny MGI's motion because MGI has not shown that it cannot perform under the settlement agreement or that the value of Svanaco's performance has been negated. MGI has raised several objections to the Magistrate Judge's Report and Recommendation. (Dkt. No. 289.)

## I.

Settlement agreements are governed by state contract law. *Magallanes v. Ill. Bell Tel. Co.*, 535 F.3d 582, 584 (7th Cir. 2008). In Illinois, "[a] settlement agreement is enforceable if there was a meeting of the minds or mutual assent to all material terms." *Beverly v. Abbott Lab'ys*, 817 F.3d 328, 333 (7th Cir. 2016). A "meeting of the minds" requires "assent to the same things in the same sense on all essential terms and conditions." *IMI Norgren, Inc., v. D&D Tooling Mfg., Inc.*, 306 F. Supp. 2d 796, 802 (N.D. Ill. 2004) (quoting *Pritchett v. Asbestos Claims Mgmt. Corp.*, 773 N.E.2d 1277, 1282 (Ill. App. Ct. 2002)). The Court analyzes "the parties' objective conduct, not their subjective beliefs" to determine whether a meeting of the minds occurred. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007) (citing *Paxton-Buckley-Loda Educ. Ass'n, IEA-NEA v. Ill. Educ. Lab. Rels. Bd.*, 710 N.E.2d 538, 544 (Ill. App. Ct. 1999)).

This Court reviews *de novo* all portions of the Report and Recommendation to which the parties have properly objected. Fed. R. Civ. P. 72(b). Svanaco contends that the Court's review should be limited to whether the Magistrate Judge's analysis is "clearly erroneous or is contrary to law" pursuant to Federal Rule of Civil Procedure 72(a). But Svanaco's motion to enforce the settlement is dispositive of the parties' claims and therefore must be reviewed *de novo*. *See Thompson v. ATG Credit, LLC*, No. 18 C 1992, 2018 WL 4517676, at *6 (N.D. Ill. July 17, 2018) (motion to enforce settlement is dispositive for purposes of Rule 72).

## II.

Svanaco initially moved to enforce its proposed release language, which would have exempted Brand entirely from the mutual global release. The Magistrate Judge recommended denial of this request in her Report and Recommendation. As Svanaco did not object to the Magistrate Judge's recommendation, this Court will not revisit Svanaco's proposal to carve out Brand completely from the release. However, the Magistrate Judge concluded that Svanaco did not release any claims it holds against Brand to the extent he acted outside of his role as MGI's agent. MGI objects to that finding, contending that the mutual global release clause was not definite enough to be enforced. According to MGI, the entire settlement agreement is void and cannot be enforced because the parties did not agree on its terms.

Contract terms are definite enough to be enforced when "the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do." *Acad. Chi. Publishers v. Cheever*, 578 N.E.2d 981, 983 (Ill. 1991) (internal quotation marks omitted). That is, "the promises and performances to be rendered by each party [must be] reasonably certain." *Id.* (internal quotation marks omitted). But an agreement does not need to address "[e]very feasible contingency" to be enforceable. *Pritchett*, 773 N.E.2d at 1282. Instead, "[i]n cases where ancillary matters are missing or left to be agreed upon at a later date, Illinois courts have held that the material terms underpinning the settlement agreements will still be enforceable." *Artuk, Inc. v. AKT Corp.*, No. 13 C 3811, 2014 WL 3895920, at *11 (N.D. Ill. Aug. 7, 2014).

The Magistrate Judge here concluded that the parties' agreement to a "mutual global release clause" had a definite, objective meaning. The purpose of the clause was to bring an end to the litigation between Svanaco and MGI. To accomplish this, the mutual global release necessarily included Svanaco's and MGI's claims against all parties related to the dispute, including employees and agents of Svanaco and MGI. This understanding is reflected in the parties' dueling proposed settlement agreements, both of which provide for mutual releases of claims against each party's "former, current, and future . . . employees [and] agents." (Svanaco Draft ¶¶ 4–5; MGI Draft ¶¶ 2–3.) But the clause does not naturally include any claims against third parties acting on their own behalves. Imagine that an independent contractor employed by Svanaco had, unbeknownst to the parties and on her own time, hijacked a truck full of sports equipment owned by MGI. Under MGI's interpretation of the clause, the mutual global release would include all claims MGI held against the contractor for the stolen sports equipment. This is not a natural reading of the parties' terms, and the Court is persuaded by the Magistrate Judge's reasoning.

MGI further contends that the phrase "mutual global release" is too ambiguous to enforce. Specifically, it posits that this term could refer to a release of all claims against all persons or a release of all claims the parties hold against one another. But MGI's reading unreasonably assumes that the parties meant to leave themselves defenseless against unrelated third parties with a stake in the dispute, as discussed above. The Court concludes that the clause is not ambiguous and MGI's interpretation of the clause is not reasonable. *See Thompson v. Gordon*, 948 N.E.2d 39, 48 (Ill. 2011) (contract language not ambiguous where "not reasonably susceptible to more than one meaning"). Brand is protected by the parties' settlement but only to the extent he acted as MGI's agent.

MGI objects that this is insufficient because it will be roped into ensuing litigation regarding the extent of Brand's agency. But, as discussed above, MGI already agreed to a mutual global release, which by its definition does not prevent either party from asserting claims regarding the same incident against unrelated parties. If MGI wanted Svanaco to waive all its claims against Brand, it needed to bargain for that specific term. *See Laserage Tech. Corp. v. Laserage Lab'ys, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992) (explaining that in contract, the parties' intent "depends on what the parties express to each other and to the world, not on what they keep to themselves"). Further, the Court does not find it credible that MGI required a total release of claims against Brand as an essential settlement term. MGI appears to have no stake in any judgment that Svanaco may obtain against Brand. And the Court has already entered a default order against Brand in this case. Finally, MGI's position is inconsistent with its conduct in a status hearing before this Court. Shortly after the settlement conference, Svanaco's counsel told the Court that it would be moving for a default judgment against Brand. (Pl.'s Reply, Ex. A., Tr. of Proceedings at 4–6, Dkt. No. 284-1.) The next steps for seeking a default judgment against Brand were discussed in some detail, but MGI did not object at any time. (*Id.*)

The Court overrules MGI's objection to the Report and Recommendation and interprets the mutual global release as follows. MGI releases all claims against Svanaco, including Svanaco, its predecessors, successors, affiliates, and parents, and collectively, their respective former, current and future directors, officers, employees, agents, representatives, shareholders, attorneys, fiduciaries, insurers, and assigns. Likewise, Svanaco reciprocally releases all claims against MGI and any such related individuals and entities. Accordingly, Svanaco releases all claims against Brand based on actions he took as MGI's agent but does not release any claims against Brand based on actions he took outside the scope of his agency. Finally, the parties' mutual global release does not include the general carve-out for Brand included in Svanaco's draft agreement.

### III.

MGI next objects that the Court should not enforce the non-disparagement language proposed by Svanaco. Svanaco proposed the following language: "MGI agrees that it will not make any statements, either oral or written, and will not take any other actions that disparage or reflect negatively on any or all of the Svanaco Released Parties." (Svanaco Draft ¶ 8.) Its draft also included an identical agreement by Svanaco regarding the MGI Released Parties. MGI, however, proposed a one-sided non-disparagement clause preventing Svanaco from disparaging MGI but imposing no obligations on MGI. Its proposed language read as follows:

> Svanaco agrees that neither it nor any of its agents will make any statements, either oral or written or post any statements on any website or social media platform that disparage or contain negative comments or could be reasonably expected to adversely affect the personal or professional reputation of any of the MGI Released Parties. Svanaco will take down or retract any negative online statements that either Svanaco or its agents have posted regarding any of the MGI Released Parties. Violation of these terms will result in MGI being discharged from any further obligation to make payments under this agreement.

(MGI Draft ¶ 6.) MGI objects to Svanaco's draft because (1) MGI could be held liable for disparaging statements or actions by Brand and (2) the term "reflect negatively" is too vague to be enforced.

The Court finds that the meaning of the mutual non-disparagement clause is captured by Svanaco's draft agreement, which straightforwardly prohibits the parties from disparaging one another. The Court finds no merit in MGI's objections. First, the agreement is forward-looking. Thus, MGI bears no responsibility for any disparaging comments made by Brand unless it chooses to employ him as a consultant or employee in the future. The agreement only binds MGI and Svanaco (and, by extension, their employees and agents) but not former employees and agents or other third parties. Second, the term "reflect negatively" is not too vague to be enforced; to the contrary, similar language has been found enforceable in Illinois. *See E.E.O.C. v. Severn Trent Servs., Inc.*, 358 F.3d 438, 440 (7th Cir. 2004) (non-disparagement clause preventing party from making "any remarks that would tend to or could be reasonably construed to tend to defame"); *Patlovich v. Rudd*, 949 F. Supp. 585, 594 (N.D. Ill. 1996) (clause preventing party from "engag[ing] in any action either directly or indirectly that disparages or results in the disparagement [of the opposing party]").

Because MGI has not explained why Svanaco's draft of the mutual non-disparagement clause departs in any way from the terms sheet or subjects MGI to undue liability, that term will be enforced as drafted by Svanaco.

## IV.

Finally, MGI raises defenses of impossibility and impracticability of performance, contending that it should be relieved from performance because of the impact of the COVID-19 pandemic on its business. MGI also raises a frustration of purpose defense against enforcement, stating that COVID-19 has eliminated the value of the settlement to MGI.

Impossibility of performance is an affirmative defense under Illinois law. *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 933 N.E.2d 860, 862 (Ill. App. Ct. 2010). It requires a showing that "the purposes for which a contract was made have become impossible to perform on one side." *Id.* (internal quotation marks omitted). Impossibility is established "where performance is rendered objectively impossible due to destruction of the subject matter of the contract or by operation of law." *Id.* at 865 (citing *Leonard v. Autocar Sales & Serv. Co.*, 64 N.E.2d 477, 479 (Ill. 1945)). "The party advancing the doctrine must show that the events or circumstances which he claims rendered his performance impossible were not reasonably foreseeable at the time of contracting." *Id.* "[T]he financial difficulty in performing an obligation pursuant to a contract cannot by itself operate to extinguish that obligation." *United States v. Moore Am. Graphics, Inc.*, No. 84 C 6547, 1989 WL 81799 (N.D. Ill. July 10, 1989) (citing *Joseph W. O'Brien Co. v. Highland Lake Constr. Co.*, 307 N.E.2d 761 (Ill. App. Ct. 1974)); *see also Ner Tamid Congregation of N. Town v. Krivoruchko*, 638 F. Supp. 2d 913, 931–32 (N.D. Ill. 2009) (stating that even extreme difficulty or unanticipated expense of performance does not establish impossibility).

To succeed in its impracticability defense, MGI must show that "(1) a contingency has occurred; (2) the contingency has made performance impracticable; and (3) the nonoccurrence of

that contingency was a basic assumption upon which the contract was made." *Waldinger Corp. v. CRS Grp. Eng'rs, Inc., Clark Dietz Div.*, 775 F.2d 781, 786 (7th Cir. 1985). Its frustration of purpose defense requires that "(1) the frustrating event was not reasonably foreseeable and (2) the value of counterperformance has been totally or nearly totally destroyed by the frustrating event." *United States v. Sw. Elec. Co-op., Inc.*, 869 F.2d 310, 315 (7th Cir. 1989).

To start, MGI has not presented evidence that it cannot make the agreed-upon payments to Svanaco. It presented a one-page table showing that its athletic sales had substantially declined. (Decl. of Neil Gilman, Ex. 2, Athletic Sales Comparison, Dkt. No. 281.) MGI noted that many high school football seasons had been cancelled, impacting MGI's sales of sports equipment, and that MGI had repurposed its facilities to manufacture personal protective equipment. (Decl. of Neil Gilman ¶¶ 5, 8–14.) But MGI offers no evidence that it would be pushed into insolvency if required to make the payments due to Svanaco. For example, MGI presents no information regarding its cash reserves, insurance policies, projected profits and losses, or other relevant financial information. Its impossibility defense fails based on its inadequate showing alone.

Further, courts in other districts have rejected attempts to excuse contractual performance based on the COVID-19 pandemic. One such case applied New York state law, which, like Illinois law, allows for an impossibility defense "only when . . . performance [is rendered] objectively impossible . . . by an unanticipated event that could not have been foreseen or guarded against in the contract." *Lantino v. Clay LLC*, No. 1:18-CV-12247 (SDA), 2020 WL 2239957, at *3 (S.D.N.Y. May 8, 2020) (internal quotation marks omitted). The *Lantino* court held that financial difficulties arising from the COVID-19 pandemic did not meet this standard. *Id.* Here, while the COVID-19 pandemic has surely harmed MGI's business, "[t]he risk that economic conditions may change . . . [is] not so unforeseeable that [it is] outside the risks assumed under the contract." *FTC v. A.S. Rsch., LLC*, No. 19-CV-03423-PAB-KMT, 2020 WL 4193507, at *2 (D. Colo. July 21, 2020) (rejecting argument that COVID-19 pandemic frustrated purposes of settlement). It was foreseeable that MGI's business might suffer or face changed economic circumstances. Even if the parties could not have anticipated that a global pandemic would be the particular cause of MGI's challenges, its reduced sales and revenues were not so unforeseeable as to sustain an impossibility defense.

While MGI cites several cases in support of its impossibility defense, in those cases government action rendered performance impossible or nullified the value of the contract. *See Patch v. Solar Corp.*, 149 F.2d 558 (7th Cir. 1945) (contract requiring payment of royalties on manufacture of washing machines, where federal government prohibited manufacture of washing machines during wartime); *Moffitt v. City of Rock Island*, 397 N.E.2d 457 (Ill. App. Ct. 1979) (unforeseeable takeover of road construction project by state government relieved city of performance obligations); *Fisher v. U.S. Fid. & Guar. Co.*, 39 N.E.2d 67 (Ill. App. Ct. 1942) (ordinance prohibiting construction and operation of movie theater, which was unanticipated by parties, relieved parties of performance obligations); *Levy v. Johnston & Hunt*, 224 Ill. App. 300 (1922) (lease for operation of saloon voided due to onset of Prohibition). The parties' agreement in this case—that MGI make payments to Svanaco to resolve a dispute between the parties—has not been rendered impossible by government action.

MGI's additional defenses of impracticability and frustration of purpose likewise lack merit. MGI has not shown that it is impracticable to make the promised payments. Further, the

nonoccurrence of a global pandemic was not a basic assumption of the parties' bargain. *Waldinger Corp.*, 775 F.2d at 786. Similarly, there is no frustration of purpose because Svanaco's performance of the settlement terms remains valuable to MGI. If the settlement were voided, Svanaco would be able to pursue its claims and proceed to trial against MGI. Even though MGI is in a precarious economic position, it still derives value from Svanaco's release of claims. Thus, the Court denies MGI's motion for relief from compliance with the February 5, 2020 agreement.

## V.

For the above reasons, the Court adopts the Magistrate Judge's Report and Recommendation, with the clarifications to the terms of the parties' mutual global release and non-disparagement provision discussed above.

Dated:  June 21, 2021

_____
Andrea R. Wood
United States District Judge